**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

HAROLD SMITH; LAURA SMITH; and
SHANIKQUA SMITH,

      Plaintiffs,

v.                                                  Case No. 6:14-cv-1704-Orl-37TBS

ALAN J. CONFREDA; SHERIFF OF
BREVARD COUNTY, FLORIDA; BRIAN
GUILFORD; BENJAMIN ERSKINE;
LUIS FIGUEROA; CHRISTOPHER
GALLO; and BRIAN STOLL,

      Defendants.

**ORDER**

This cause is before the Court on the following:

1. Defendant Figueroa's Motion to Dismiss the First Amended Complaint with Incorporated Memorandum of Law (Doc. 61), filed September 1, 2015; and

2. Plaintiff, Harold Smith, Laura Smith, and Shanikqua Smith's Response to Dedendant, Luis Figueroa's, Motion to Dismiss [DE 61] (Doc. 62), filed September 18, 2015.

Upon consideration, the Court finds that the Motion is due to be granted.

On April 18, 2013, a Mr. Normelus Pierrevilus, Jr. ("**Suspect**") was charged with the sale/delivery and possession of less than 28 grams of cocaine. (Doc. 29, ¶ 20); *see also Florida v. Pierrevilus*, No. 05-2013-CF-054911 (Fla. Brevard Cnty. Ct.). Suspect—allegedly "known to officers"—was a 22-year-old African-American male who stood 5'2'' tall and weighed approximately 136 pounds. (Doc. 29, ¶ 35.) On August 22, 2013, the Brevard County Sheriff's Department received information that Suspect used a cell phone

"in the area of Palmer Street" in Rockledge, Brevard County, Florida. (*Id.* ¶ 21.) Deputy Timothy Hart tracked Suspect's cell phone and informed Defendant Alan J. Confreda ("**Confreda**")—supervisor of the Gang and Major Epidemic of Violence Enforcement Response Partnership ("**GAMEOVER Task Force**") (*id.* ¶ 7)—that Suspect "was physically between the residences located at 976 and 974 Palmer Street" (the "**Area**") (*id.* ¶ 23). Defendant Benjamin Erskine ("**Erskine**") conducted surveillance of the Area that evening. (*Id.* ¶ 30.)

Plaintiffs Harold ("**Mr. Smith**") and Laura ("**Mrs. Smith**") Smith and their daughter, Plaintiff Shanikqua Smith (**Daughter**"), reside at 976 Palmer Street, Rockledge, Florida, in Brevard County ("**Residence**"). (*Id.* ¶ 15.) Sometime after 7:00 p.m. on August 22, 2013, the 51-year old, 5'9" Mr. Smith arrived at the Residence. (*Id.* ¶¶ 28, 29.) Erskine saw Mr. Smith arrive and mistook him for Suspect. (*Id.* ¶ 30.) Confreda then briefed members of the Brevard County GAMEOVER Task Force ("**Task Force Members**") and instructed them that "their objective was to locate and arrest [Suspect], [] that [Suspect] had no residential address *per se*, [] that there existed no search warrant for [Residence]," and that Suspect "changed locations every 15 to 20 minutes, day and night" ("**Briefing**"). (*Id.* ¶¶ 37–39.)

Between 8:00 and 9:00 p.m. on August 22, 2013, the Task Force Members, including Confreda, Erskine, and Defendants Brian Giulford ("**Guilford**"), Luis Figueroa ("**Figueroa**"), Christopher Gallo, and Brian Stoll converged on the area of the Residence. (*Id.* ¶¶ 41–43.) "At the direction of Confreda, Erskine and Figueroa entered the fenced side and back yard of the [Residence], without a search warrant or exigent circumstances and probable cause." (*Id.* ¶ 44.) The other Defendants surrounded the remainder of the

2

Residence (*id.* ¶¶ 47–52) and a helicopter circled overhead (*id.* ¶ 53).

Confreda—using a voice amplifer—called for all persons inside the Residence to "exit the residence with [their] hands up." (*Id.* ¶ 56.) The only persons inside the Residence were Mr. Smith, Mrs. Smith, and Daughter. (*Id.* ¶ 75.) When Mr. Smith opened the door, Task Force Members pointed their rifles at him and Confreda—using the amplifer—told him to step outside with his hands up. (*Id.* ¶¶ 58, 60, 61.) Mr. Smith obliged. (*Id.* ¶ 61.) Guilford handcuffed Mr. Smith and conducted a pat-down search of Mr. Smith's person. (*Id.* ¶ 63.) Confreda then requested that Mrs. Smith and Daughter exit the Residence and, when they obliged, he "detained" and questioned them regarding Suspect. (*Id.* ¶¶ 65–72.) Mrs. Smith consented to a search of the Residence. (*Id.* ¶ 75.) Plaintiffs were then released and the Task Force Members took up new positions at the house next door to the Residence. (*Id.* 76.)

The entire encounter lasted approximately 20-25 minutes. (*Id.*) At all times during the encounter, Figueroa "remained at or near the northwest corner of the [Residence], adjacent to the north (back) or west (side) walls of the residence, . . . which provided [him] with visual access to exterior windows." (*Id.* ¶ 48.)

Alleging, *inter alia*, that Defendants violated their Fourth Amendment rights, Plaintiffs initiated this action on October 20, 2014. (Doc. 1.) Defendants Confreda, Sheriff of Brevard County, Florida, Guilford, Erskine, Gallo, and Stoll answered. (Docs. 34–37, 40, 60.) Defendant Figueroa moved to dismiss the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 61.) Plaintiffs responded. (Doc. 62.) The matter is now ripe for adjudication.

**STANDARDS**

Federal Rule of Civil Procedure 8(a)(2) provides that a claimant must plead "a short and plain statement of the claim." On a motion to dismiss pursuant to Rule 12(b)(6), the Court limits its consideration to "the well-pleaded factual allegations." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this plausibility determination, the Court must accept the factual allegations as true; however, this "tenet . . . is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers mere "labels and conclusions" is therefore insufficient. *Twombly*, 550 U.S. at 555.

**DISCUSSION**

Defendant Figueroa argues that the Court should dismiss Plaintiffs' claims against him because he is entitled to qualified immunity. (Doc. 61, pp. 4–8.) Plaintiffs counter that Figueroa is not entitled to qualified immunity because he violated a clearly established law when he entered Plaintiffs' curtilage without proabable cause. (Doc. 62.) Plaintiffs claim that: (1) based on the Briefing, Figueroa "lacked 'reason to believe'" that Mr. Smith was Suspect or that Suspect was residing at Residence; and (2) Figueroa is not entitled to qualified immunity on the basis that he was following Confreda's orders. (*Id.* at 10–22.) The Court agrees with Figueroa.

Assisting officers are "entitled to qualified immunity when there is no indication that they acted unreasonably in following the lead of a primary officer or that they knew or should have known that their conduct might result in a [constitutional] violation, even when the primary officer is not entitled to qualified immunity." *Shepard v. Hallandale Beach*

*Police Dep't*, 398 F. App'x 480, 483 (11th Cir. 2010) (citing *Brent v. Ashley*, 247 F.3d 1294, 1306 (11th Cir. 2001) (finding that defendant officers who accompanied a deputy that performed an unauthorized search were entitled to qualified immunity because the record was devoid of evidence that supported the conclusion that defendants acted unreasonably or had reason to suspect that the plaintiff's rights were being violated).

Here, Figueroa followed the direction of Confreda—who Plaintiffs concede was Figueroa's supervisor (Doc. 29, ¶ 11 (alleging that Figueroa was a Task Force Member acting "under the immediate supervision and control of" Confreda)—when he entered Plaintiffs' curtilage. *Contra O'Rouke v. Hayes*, 38 F.3d 1201, 1210 n.5 (11th Cir. 2004) (suggesting that the outcome may be different when an officer acts at his own accord rather than at the direction of his supervisor, superior, or someone whose orders he is obligated to follow). Absent from the Complaint are allegations that Figueroa saw Mr. Smith or knew that Mr. Smith was not Suspect.[1] Even taken in the light most favorable to Plaintiffs, the allegations fail to establish that Figueroa acted unreasonably in following Confreda's orders, that a reasonable officer in Figueroa's shoes would have known that his conduct might result in the violation of Plaintiffs' constitutional rights, or that Figueroa had reason to suspect that Suspect was not at the Residence. Indeed, the allegations establish just the opposite—that Suspect had used a cellphone around the Residence,

---

[1] Plaintiffs allege that, when Mr. Smith exited the Residence, it was "plainly obvious" to the Task Force Members, including Confreda and Guilford, that Mr. Smith was not Suspect based on their physical differences. (Doc. 29, ¶ 59.) However, Figueroa remained in the backyard curtilage during the entire encounter (*id.* ¶ 48), and Plaintiffs do not allege that Figueroa ever saw Mr. Smith or participated in the physical detention of Plaintiffs.

and that Erskine mistakenly believed he saw Suspect entering the Residence. Thus, Figueroa is entitled to qualified immunity. *See, e.g.*, *Hartsfield v. Lemacks*, 50 F.3d 950, 965 (11th Cir. 1995) (concluding that two officers were entitled to qualified immunity because "nothing in the record indicate[d] that [they] acted unreasonably in following [a lead officer's] lead, or that they knew or should have known that their conduct might result in a violation of [plaintiff's] Fourth Amendment rights").

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendant Figueroa's Motion to Dismiss the First Amended Complaint with Incorporated Memorandum of Law (Doc. 61) is **GRANTED**.

2. The claims against Defendant Luis Figueroa in Count V (Doc. 29, ¶¶ 103–07), Count VI (*id.* ¶¶ 108–12), and Count CII (*id.* ¶¶ 113–17) are **DISMISSED**.

3. Luis Figueroa is **TERMINATED** as a party to this action.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 9, 2015.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record